IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHERYL DOUGHERTY, individually,
and on behalf of all others similarly situated,

       Plaintiff,

v.                                                      CIVIL ACTION NO.: 2:09-CV-00443
                                                     (Honorable John T. Copenhaver, Jr.)

RAMONA CERRA, *et al.*

       Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, individually, and on behalf of all others similarly situated, and hereby responds to Defendants' Motion to Dismiss ("MTD") the Third Amended Complaint ("TAC") or, in the alternative, Motion for Summary Judgment. Plaintiff requests that this Court deny Defendants' MTD. In the alternative, Plaintiff requests that this Court withhold judgment on Defendants' MTD and remand this to case to state court for further proceedings.

In their Motion, Defendants argue that any connection—however tenuous—between their misrepresentations and a securities transaction establishes federal preemption under the Securities Litigation Uniform Standards Act of 1998 (SLUSA). But Plaintiff expressly limited her class action to individuals who invested in Defendants' VALIC fixed annuity, which is not a security at all. Thus, Plaintiff has not alleged Defendants' misrepresentations are connected with the purchase of securities. If Defendants' position was correct, every breach of a fiduciary duty could potentially become a federal securities violation. Because

neither Congress nor the Supreme Court has intended this, Defendants cannot establish preemption.

Moreover, Defendants' Motion to Dismiss misstates the applicable law on the discovery rule in West Virginia. In April of 2008, the West Virginia legislature passed a law that permitted teachers enrolled in the Teachers' Defined Contribution Plan ("DCP") to vote to transfer back to the Teachers' Retirement System ("TRS"), a defined benefit pension plan. To educate Plaintiff on how to vote, Defendant West Virginia Consolidated Retirement Board ("WVCPRB") sent Plaintiff a personalized statement comparing what she was going receive under the DCP to what she would receive if she transferred back to the TRS. By reviewing this statement, Plaintiff learned for the first time that she had lost a substantial amount of money by enrolling in the DCP instead of remaining in the TRS. This was the first time that Plaintiff knew or reasonably should have known that she had been injured by Defendants' actions or omissions. Therefore, the discovery rule tolled the statute of limitations from running until April of 2008.

Finally, Plaintiff's TAC sufficiently pleads state law claims upon which relief can be granted. Although Defendants argue that their alleged misrepresentations were solely related to the future performance of the VALIC fixed annuity, Plaintiff alleged in her TAC that Defendants' misrepresented existing facts. First, Defendants misrepresented to Plaintiff and Class members that it intended to provide them with better benefits than they could receive under the TRS when they knew that this would not happen. Second, Defendants made misrepresentations about the State of West Virginia's constitutional obligations to pay teachers under the TRS

I.     STATEMENT OF FACTS

In the academic year 1990-91, Plaintiff met with Defendants' representative, Defendant Cerra, at the school in Marshall County where she worked as a teacher. (See TAC at 34). At that time, Plaintiff was enrolled in the TRS. During the meeting, Defendant Cerra told Plaintiff that the TRS was in grave danger and would not be able to pay her retirement benefits. Defendant Cerra also represented to Plaintiff that if she enrolled in the new DCP, then she would retire with even better benefits than her peers who remained in the TRS. (Id. at 36). As a result of Defendant Cerra's representations, Plaintiff transferred her retirement fund account to Defendants' VALIC fixed annuity in 1992. (Id. at 37; See also Defendants' Appendix in Support of MTD at Exhibit 5).

In 2008, the West Virginia legislature passed House Bill 101 providing DCP participants with the opportunity to elect to transfer to the TRS. For the transfer to occur, at least 65% of members had to affirmatively elect to transfer to the TRS. (See WVCPRB Letter dated March 18, 2008, attached hereto as Exhibit A). To assist in making the decision of whether to transfer to the TRS, Defendant WVCPRB provided Plaintiff and Class members with a personalized statement of their retirement benefits in April of 2008. (See TAC at ¶ 8).

As a result of reviewing her personalized statement, Plaintiff learned for the first time that, contrary to Defendants' misrepresentations, she would have been much better off had she not transferred her retirement funds to Defendants' fixed annuity. (Id.). Plaintiff has provided a sworn affidavit to this effect. (See Affidavit of Cheryl Dougherty, attached hereto as Exhibit B).

In most of the possible retirement scenarios stated in the personalized statement, Plaintiff could approximately double her estimated monthly benefits by transferring back to the TRS. However, to receive the full benefit of transferring back to the TRS, Plaintiff also

learned that she would have to purchase an additional 25% service credit. (See Personalized Statement, attached hereto as Exhibit C). Plaintiff purchased the 25% service credit in June of this year for $13,679.01. (See Check, attached hereto as Exhibit D).

## II. STATEMENT OF THE CASE

Plaintiff filed this class action in the Circuit Court of Marshall County, West Virginia on May 12, 2008 against the AIG/VALIC and individual Defendants. The putative Class consists of all individuals who transferred their retirement funds from the TRS to the Defendants' VALIC fixed annuity in 1992 as a result of Defendants' misrepresentations. (See Defendants' Notice of Removal at Ex. A). On July 18, 2008, Plaintiff amended her Class Action Complaint to add Defendant WVCPRB. As a result of adding Defendant WVCPRB, the class action was transferred to the Circuit Court of Kanawha County. (See Id.).

On March 26, 2009, Plaintiff moved the Circuit Court of Kanawha County for leave to file a Second Amended Class Action Complaint. Plaintiff attached the proposed Second Amended Class Action Complaint to her Motion for Leave to Amend as an exhibit. In the Second Amended Complaint, Plaintiff added allegations connecting the AIG/VALIC Defendants' high risk securities activities, which led to the government bailout of AIG in 2008, to Plaintiff's damages. (See Id.).

Defendants filed a Notice of Removal on April 24, 2009. In its Notice, Defendants represented to this Court that the date on which Plaintiff filed her Motion for Leave to Amend was the first date that "it could be ascertained that this case is one which is or has become removable." (Id. at ¶ 2). Specifically, Defendants argued that Plaintiff's allegations that she and Class members were harmed by the AIG/VALIC Defendants' reckless security lending activities fell within the preemptive scope of SLUSA. (See Id. at ¶ 19).

After filing her Second Amended Class Action Complaint, Plaintiff examined her SLUSA claims in greater detail. Plaintiff concluded that the difficulties in tying Defendant AIG's securities activities in 2008 to its fraudulent acts nearly two decades earlier were too great to justify going forward with its SLUSA claims. (See Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Remand at 2-3). Therefore, under a stipulation between the parties, Plaintiff filed her TAC on June 25, 2009 deleting the SLUSA claims that made this case removable and retaining the state law claims. (See TAC). Plaintiff also filed a Motion to Remand, which is currently pending before this Court. (See Plaintiff's Motion to Remand). Because Plaintiff's TAC only contains state law claims, Plaintiff has argued that the principles of comity favor remanding this case to state court, which is a more appropriate forum for deciding novel issues of state law. (See Plaintiff's Memorandum in Support of Plaintiff's Motion to Remand).

### III.   ARGUMENT

#### A. This Court should find that SLUSA does not preempt Plaintiff's claims.

##### 1. No one in the Class purchased "a covered security."

To establish SLUSA preemption, Defendants must show that Plaintiff's action is (1) a covered class action, which (2) alleges a misrepresentation or omission of material fact (3) in connection with the purchase or sale of (4) a covered security. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 74 (2006) (citing 15 U.S.C. § 78bb(f)(1)(A) (2000)). Assuming *arguendo* that Defendants can show the first three elements stated above, Defendants cannot prove the final element that Plaintiff's claims involve "covered securities" under SLUSA.

A "covered security" is a security that is traded nationally and listed on a regulated national exchange. See Dabit, 547 U.S. at 83; 15 U.S.C. § 78bb(f)(5)(E); 15 U.S.C. § 77r(b).

Moreover, to be a "covered security," the security must have been traded and listed on a regulated national exchange at the time of the alleged misrepresentation or omission. See 15 U.S.C. § 78bb(f)(5)(E).

Under the definition provided by the statute, neither Plaintiff's nor the Class's claims involve the purchase or sale of "a covered security." Defendants have admitted that the VALIC fixed annuity that Plaintiff purchased in 1992 was not a security at all. (See Defendants' Memorandum in Support of MTD at 8). As such, the VALIC fixed annuity is not registered as a security. It is also not listed and traded on a regulated national exchange. Because the VALIC fixed annuity is not a security, the VALIC fixed annuity cannot be "a covered security." As previously stated in the Statement of Facts, the Class that is represented by Plaintiff consists only of those individuals who purchased the VALIC fixed annuity as a result of Defendants' alleged misrepresentations. (See TAC at ¶ 22). Therefore, Plaintiff's class action is not preempted by SLUSA.

Defendants have primarily focused their analysis on the "in connection with" requirement, which is stated above as the third element of the test for SLUSA preemption. Under this element of the test, a defendant must prove that the alleged misrepresentation was made "in connection with" the purchase or sale of a covered security. Defendants rely heavily on Dabit for the proposition that a defendant's alleged misrepresentations simply have to "coincide" with a security transaction to meet the "in connection with" requirement. (See Defendants' Memorandum in Support of MTD at 15 (citing Dabit, 547 U.S. at 89)). [1]

---

[1] In Dabit, the plaintiff was a broker for Merrill Lynch. The plaintiff's theory was that Merrill Lynch's overly optimistic appraisals of its investment banking clients' stocks had caused him to hold onto those stocks even though they were overvalued. Therefore, the plaintiff unsuccessfully attempted to argue that the alleged fraud was not "in connection with the purchase or sale" of securities. The Supreme Court held that it was enough that Merrill Lynch's fraud had coincided with a securities transaction, regardless of identification of a purchaser or seller. Of course, because Dabit involved stocks, the plaintiff did not dispute that his claims were associated with "covered securities."

Because the DCP is "an investment platform" that offers three securities investment options in addition to the VALIC fixed annuity, Defendants assert that their alleged misrepresentations coincided with or "touched" a securities transaction. Although Defendants may be correct that the Supreme Court broadly construed the "in connection with" requirement in Dabit, the fact remains that the putative Class is expressly limited to individuals who transferred their retirement funds to Defendants' annuity.

Dabit is distinguishable from the case *sub judice*. At the outset of its discussion in Dabit, the Supreme Court noted that the plaintiff did not dispute that he had purchased "a covered security:"

> Respondent does not dispute that both the class and **the securities** at issue in this case are **"covered" within the meaning of the statute**, or that the complaint alleges misrepresentations and omissions of material facts. The **only disputed issue** is whether the alleged wrongdoing was "**in connection with** the purchase or sale" of securities.

547 U.S. at 83-84 (emphasis added). Because the plaintiff in Dabit did not dispute that his case involved covered securities, that issue was not even part of the Supreme Court's analysis.

The Supreme Court's broad construction of the "in connection with" requirement "does not transform every breach of fiduciary duty into a federal securities violation. If, for example, a broker . . . induce[d] his client into a fraudulent real estate transaction, the fraud would not include the requisite connection to a purchase or sale of securities." SEC v. Zandford, 535 U.S. 813, 825 n.4 (2002). Although the Supreme Court has broadened the reach of SLUSA through the "in connection with" requirement, Defendants still cannot show that their alleged misrepresentations are connected to the purchase or sale of covered securities.

Defendants also argue that because Plaintiff has alleged that their misrepresentations induced her to not only purchase the VALIC fixed annuity, but also to enroll in the DCP, then their alleged misrepresentations are connected to the purchase of covered securities. Specifically, Defendants maintain that because the DCP is an investment platform that offered securities investments in addition to the VALIC fixed annuity, Defendants misrepresentations about the DCP "touched" the purchase or sale of those securities investment options. (See Defendants' Memorandum in Support of MTD at 16-17).

Again, Defendants ignore the fact that the Class is expressly limited to those individuals who initially chose to invest in the VALIC fixed annuity. The Class does not include those individuals who initially chose to invest in the securities options. Moreover, in the TAC, Plaintiff only alleged that Defendants' misrepresentations induced her and Class members to purchase the VALIC fixed annuity (See TAC at ¶ 43). Plaintiff has not filed this class action against any of the other investment companies that provided investment options—securities or otherwise—in the DCP. Plaintiff has only sued those companies that offered and profited from the sale of the VALIC fixed annuity—a non-security. Therefore, Defendants' alleged misrepresentations about the DCP are not connected with the purchase or sale of covered securities, but only to the purchase or sale of the VALIC fixed annuity as alleged in the Complaint.

The Second Circuit Court of Appeals recently found that SLUSA did not preempt a class action in a similar case. In Ring v. AXA Financial, Inc., the plaintiff purchased a variable life insurance policy for her own life and added a Children's Term Rider ("CTR") covering her then twelve year old daughter. 483 F.3d 95 (2d Cir. 2007). Under the terms of the CTR, the insurance company would pay the plaintiff a death benefit if her daughter died

before her 25th birthday. After her daughter turned 25, the insurance company continued to charge the plaintiff for the CTR even though she could receive no benefit from it. The plaintiff filed a class action on behalf of individuals who purchased the defendants' life insurance policy with a CTR and continued to pay money for the CTR after their child turned 25. Id. at 96-97.

The CTR by itself was pure insurance with no residual value at the end of its term, which means that it did not meet the definition of a covered security. However, the defendants argued that because the CTR was by its own terms incorporated into the life insurance policy, which was a covered security, the plaintiff's class action was preempted by SLUSA. The Second Circuit held that because the purpose of SLUSA is to preclude class action suits alleging fraud in the sale of "covered securities," it would be entirely consistent with SLUSA to "disaggregate" the CTR from the life insurance policy. Thus, the Second Circuit found that the CTR did not become a covered security simply because it could not be sold alone. Id. at 101.

Although the Plaintiff and Class members had to enroll in the DCP to purchase the VALIC fixed annuity, even Defendants admit that standing alone, the annuity is not a covered security. Therefore, this Court should not find SLUSA preemption simply because Plaintiff and Class members had to enroll in the DCP to purchase the annuity.

Finally, Defendants support their argument that their alleged misrepresentations are connected with the purchase of securities by the fact that Plaintiff transferred from the DCP fixed annuity to a securities investment in 1997. Plaintiff and Class members were able to transfer from one type of investment option to another once at the beginning of each quarter. (See Defendants' Memorandum in Support of MTD at 16-17).

However, when looking once again at the definition of "a covered security," these facts become irrelevant. Under the statute that defines "a covered security," the relevant time period for determining whether Plaintiff purchased "a covered security" is the time of Defendants' alleged misrepresentations. See 15 U.S.C. § 78bb(f)(5)(E). Plaintiff and Class members purchased the VALIC fixed annuity when they enrolled in the DCP in 1992, which was the time of Defendants' misrepresentations. Therefore, Defendants' misrepresentations were not in connection with the purchase of a covered security, regardless of the subsequent decision of Plaintiff or Class members to invest in registered securities.

### 2. The doctrine of judicial estoppel bars Defendants' inconsistent positions.

In their Notice for Removal, Defendants represented to this Court that the date on which they received a copy of the Second Amended Complaint was the first date that "it could be ascertained that this case is one which is or has become removable." (Id. at ¶ 2). If Defendants had not taken this position, then their Notice of Removal would have been untimely filed.

A defendant must file a notice of removal within 30 days after receipt of a copy of the initial pleading or summons, whichever period is shorter. If a case is not removable initially, then a notice of removal must be filed within 30 days after receipt of a copy of an amended pleading "from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (1996).

Plaintiff deleted all of the allegations from her TAC that—as Defendants' asserted in their Notice of Removal—first made this case removable when they were alleged in the Second Amended Complaint. But Defendants now take the position that the claims stated in the TAC are still preempted by SLUSA. If this were the case, which it is not, then

Defendants' Notice of Removal was untimely filed. As such, Defendants waived their right to remove when they failed to do so within 30 days after receipt of Plaintiff's initial Class Action Complaint. See Graham v. W. Va. Div. of Highways, 245 F. Supp.2d 836 (2003)(holding that Defendant waived right to remove when it failed to file a notice of removal within 30 days from receipt of initial pleading, which raised a federal question); See also Scott v. Greiner, 858 F. Supp. 607 (1994); Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (noting that removal statutes must be strictly construed against removal).

"Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance take in prior litigation." Generally, judicial estoppel requires three elements. First, the party sought to be estopped must be seeking to adopt a factual position that is inconsistent with one taken in prior litigation. Second, the prior inconsistent position must have been accepted by the court. Finally, the party sought to be estopped must have intentionally misled the court to gain an unfair advantage. 1000 Friends of Maryland v. Browner, 265 F.3d 216, 226 (4th Cir 2001)(citing Lowery v. Stovall, 92 F.3d 219, 223-24 (4th Cir. 1996)).

In its Notice of Removal, Defendants took the position that it was not until Plaintiff served her Second Amended Complaint on them that it could first be ascertained that this case was removable. That position was accepted by this Court and removal was granted. Defendants later stipulated to permitting Plaintiff to file her TAC. In the TAC, Plaintiff reverted back to the allegations that were raised against the Defendants in her initial Class Action Complaint. Defendants now want this Court to accept the inconsistent position that Plaintiff's claims against them are still preempted by SLUSA. Finally, Defendants intentionally misled the Court to grant removal as part of its dilatory strategy. Therefore, this

Court should estop Defendants from adopting a position that is inconsistent with the position that they took in their Notice of Removal to gain an unfair advantage over Plaintiff.

**B. Because a reasonable trier of fact could find that Plaintiff neither knew nor should have known that she had been injured by Defendants' conduct until April 2008, a genuine issue of material fact exists as to whether the discovery rule tolled the applicable statute of limitations.**

The discovery rule tolls Plaintiff's and Class members' claims because a jury could reasonably find that they neither knew nor in the exercise of reasonable diligence should have known that they had been injured by Defendants' misconduct until 2008. The West Virginia Supreme Court held in Gaither v. City Hospital, Inc. that the statute of limitations runs from the date when the plaintiff knew or should have known of (1) the injury; (2) the identity of the negligent party; and (3) that the negligent party's conduct caused the injury. Syl. Pt. 4, 199 W. Va. 706, 487 S.E.2d 901 (1997). As such, the statute of limitations does not begin to run under Gaither until the plaintiff knows or should know all of the facts that are needed to establish the essential elements of a cause of action. Moreover, Gaither provides that the question of when a plaintiff knows or in the exercise of reasonable diligence should have known of the existence of a cause of action is for the jury. Id. at Syl. Pt. 5.

Defendants incorrectly argue that despite the West Virginia Supreme Court's holding in Gaither, its previous statement of the discovery rule in Cart v. Marcum governs this case. (See generally Defendants' Memorandum in Support of MTD at 19-20). Under the Cart rule, mere ignorance of the existence of a cause of action is not enough to toll the statute of limitations. For the discovery rule to apply under Cart, a plaintiff must make a strong showing of fraudulent concealment on the part of the defendant. Syl. Pt. 3, 188 W. Va. 241, 423 S.E.2d 644 (1992). Contrary to Defendants' argument, the West Virginia Supreme

12

Court has stated in subsequent opinions that <u>Gaither</u> provides the "preferred statement" of the discovery rule. See <u>Merrill v. W. Va. Dep't of Health & Human Res.</u>, 219 W. Va. 151, 156, 632 S.E.2d 307, 312 (W. Va. 2006)(*per curiam*)(citing <u>Miller v. Monongalia Co. Bd. of Educ.</u>, 210 W. Va. 147, 153 n.3, 556 S.E.2d 427, 433 n.3 (W. Va. 2001)(Starcher, J., concurring)).

<u>Gaither</u> is the more lenient version of the discovery rule. Under <u>Cart</u>, ignorance of the existence of a cause of action is not enough to toll the statute of limitations. Under <u>Gaither</u>, the plaintiff's ignorance of any of the essential elements making up a cause of action is precisely what tolls the statute of limitations. As such, the statute of limitations only begins to run under <u>Gaither</u> when the plaintiff is aware, or by the exercise of reasonable diligence should be aware, of the existence of all of the essential elements, which creates a cause of action. Therefore, this Court should only grant Defendants' Motion if it finds that no reasonable trier of fact could find that Plaintiff and Class members did not know and reasonably should not have known that she had been injured until 2008. At the very least, this Court should find that more discovery is needed before such a finding can be made.

Prior to 2008, when the legislature passed House Bill 101, Plaintiff and Class members had no reason compare what retirement benefits they would received under the DCP to what they would have receive had they remained in the TRS. With the exception of a brief period in 1994, Plaintiff and Class members never had an option to transfer back to the TRS prior to the passage of House Bill 101. Plaintiff and Class members were only able to see that they would have been much better off if they had remained in the TRS after receiving personalized statements from WVCPRB containing this information. The personalized statements also informed Plaintiff and Class members for the first time that they were going to have to spend a significant sum of money to purchase an additional 25%

service credit to receive the full benefit of transferring back to the TRS. Therefore, a reasonable trier of fact could find that Plaintiff and Class members neither knew nor reasonably should have known that they had been injured by Defendants' misrepresentations until April of 2008.

Defendants also cannot establish that a hand full of news articles that were written in 2002 preclude a reasonable trier of fact from finding that the discovery rule is applicable to this case. Defendants have submitted copies of a total of five news articles. One of the articles was published in the Huntington, W. Va. Newspaper, The Herald Dispatch, and the copy that Defendants provided is undated. The other four news articles were published in the Charleston Gazette and all four of the articles were published in the month of August 2002. Several of the articles stated that the Charleston Gazette had only received complaints from approximately a dozen teachers located in five West Virginia counties about VALIC's sales practices. (See Defendants' Request for Judicial Notice, Exhibits 8-10).

The putative Class in this case is composed of teachers who are dispersed throughout the State of West Virginia. Yet, Defendants argue that these five news articles—the vast majority of which were only published in the Charleston Gazette and only in August 2002—placed Plaintiff and Class members on constructive notice of a potential cause of action against them. Defendants' argument practically places a legal duty on the Plaintiff and Class members residing throughout West Virginia to read the Charleston Gazette. However, a reasonable trier of fact could find that, despite the existence of these five news articles, Plaintiff and Class members throughout our state neither knew nor should have known that they had been injured by Defendants' negligent conduct until 2008.

Moreover, the newspaper articles do not even provide sufficient evidence that a wide spread public debate took place over VALIC's sales practices in 2002. For the most part,

the newspaper articles show that a little more than a dozen teachers complained to the Charleston Gazette, VALIC, and the West Virginia Insurance Comissioner about this issue in 2002. Plaintiff and Class members should not be charged with constructive notice of a potential lawsuit against defendants simply because this small number of teachers had suspicions in 2002.

Finally, the news articles constitute inadmissible hearsay. The Fourth Circuit has consistently held that newspaper articles are inadmissible hearsay for proving factual matters asserted therein. See Gantt v. Whitaker, 57 Fed. Appx. 141 (2003)(*per curiam*)(citing United States v. ReBrook, 58 F.3d 961, 967 (4th Cir. 1995); Md. Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991)("Hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment")). Defendants cite the aforementioned newspaper articles to establish that a public debate took place in 2002, which placed Plaintiff on constructive notice that she had a potential lawsuit against them. However, Defendants fail to cite an exception to the hearsay rule that permits them to use statements in the newspaper articles as substantive evidence that a public debate took place in 2002. Therefore, the newspaper articles are not admissible as evidence that a public debate took place in 2002 regarding VALIC's sales practices.

C. **Plaintiff's TAC states claims upon which relief can be granted.**

   1. **Because Defendants misrepresented existing facts when they induced Plaintiff and Class members to purchase the VALIC fixed annuity, Plaintiff sufficiently pled a cause of action for fraud.**

The essential elements of a cause of action for fraud are (1) the allegedly fraudulent act was done or induced by the defendant; (2) it was materially false; (3) the plaintiff justly relied on it; and (4) the plaintiff suffered damages as a result. See Syl. Pt. 5, Terra Firma Co. v. Morgan, 647 S.E.2d 190 (2008)(internal citations omitted). Defendants argue that

15

Plaintiff's fraud claim must fail as a matter of law because it is based on their alleged misrepresentations regarding future performance of the DCP. Defendants are generally correct that fraud cannot be premised on a promise not yet performed. However, a recognized exception this rule is when the promisor did not intend to keep the promise at the time it was made and the promise is thereby used as a fraudulent device. In such a case, the defendant's intention to not keep the promise is an existing fact upon which a claim of fraud can be supported. See Elk Refining Co. v. Daniel, 199 F.2d 479, 481 (4th Cir. 1952)(internal citations omitted); Dyke v. Alleman, Syl. Pt. 1, 130 W. Va. 519, 44 S.E.2d 587 (1947).

Defendants knew when they enrolled teachers in the VALIC fixed annuity that the teachers could not do better than they would have done under the TRS defined benefit plan. Nevertheless, Defendants misrepresented to Plaintiff and Class members that they would retire with better benefits than those who remained in the TRS plan. As a result, Plaintiff and Class members signed a contract containing unconscionable terms that would undoubtedly prevent them from receiving retirement benefits that are even comparable to what they would have received under the TRS system.

Defendants also misrepresented an existing fact relating to the state's then existing obligation to pay teachers what it promised to pay them under the TRS system. Specifically, Defendants misrepresented that the TRS was on the brink of collapse and that the teachers had to enroll in the DCP to be "saved" from losing their retirement. (See TAC at ¶ 36). Although it may have been true that the TRS was an unfunded liability in 1992, the pension property rights of Plaintiff and Class members were backed by the full faith and credit of the state. The State of West Virginia was constitutionally obligated to pay teachers who had been enrolled in the TRS up to that time what it had already promised to pay them under

that system. Syl. Pt. 2, W. Va. Educ. Ass'n v. Caperton, 194 W. Va. 501, 460 S.E.2d 747 (1995)("In the same manner that a public employee's pension right is constitutionally protected, the same constitutional protection is hereby afforded the property right of a contractual nature created by the State Teachers Retirement System in W. Va. Code 18-7A-1 (1941) et seq."). As alleged in the TAC, Plaintiff and Class members were induced by Defendants' misrepresentations that the State would not make good on its payment obligations to them unless they transferred to the DCP. Therefore, Defendants made misrepresentations about the existing fact of the state's constitutional obligations to induce Plaintiff and Class members to enroll in the DCP.

Because Plaintiff has sufficiently pled a claim for fraud, Defendants' argument that Plaintiff's conspiracy and joint venture claims must be dismissed for lack of an underlying tort is also without merit.

### 2. Unconscionability can be asserted as both a defense and a cause of action.

Defendants argue that unconscionability is an equitable principle that can only be used as a contract defense. (See Defendants' Memorandum in Support of MTD at 25 (citing Troy Mining Corp. v. Itmann Coal Co., 346 S.E.2d 749, 752 (W. Va. 1986)). However, Defendants failed to cite any authority under West Virginia law expressly holding that unconscionability cannot be raised as a distinct cause of action. West Virginia already recognizes a cause of action for unconscionability in consumer contracts. See Orlando v. Finance One of West Virginia, Inc., Syl. Pt. 1, 179 W. Va. 447, 369 S.E.2d 882 (W. Va. 1988). Moreover, this Court's Huntington Division recently held that unconscionability could be affirmatively used to support a declaratory action. See Ross v. Wells Fargo Bank, NA, 2009 U.S. Dist. LEXIS 10873 (S.D.W. Va. 2009). Therefore, this Court should deny Defendants' Motion to Dismiss Plaintiff's claim for unconscionability. But at the very least, this Court

should withhold judgment and remand this case so that a West Virginia state court can decide this novel question of state law.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff, Cheryl Doughtery, individually, and on behalf of all those similarly situated, respectfully requests that this Court deny Defendants' Motion to Dismiss Third Amended Complaint, or in the alternative, Motion for Summary Judgment.

**PLAINTIFF CHERYL DOUGHERTY, individually, and on behalf of all others similarly situated,**

**By Counsel**

s/ Harry F. Bell, Jr.
Harry F. Bell, Jr., Esquire (W. Va. Bar No. 297)
Roger L. Lambert, Esquire (W. Va. Bar No. 10800)
Attorneys for Plaintiff
The Bell Law Firm, PLLC
30 Capitol Street
P.O. Box 1723
Charleston, WV 25326-1723
Telephone: (304) 345-1700
Fax: (304) 345-1715
E-mail: hfbell@belllaw.com

and

s/ Charles R. Webb
Charles R. Webb, Esquire (W. Va. Bar No. 4782)
The Webb Law Firm, PLLC
108 ½ Capitol Street, Suite 201
Charleston, WV 25301
Telephone: (304) 344-9322
Fax: (304) 344-1157
E-mail: rusty@crwlawfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHERYL DOUGHERTY, individually,
and on behalf of all others similarly situated,

    Plaintiff,

v.              CIVIL ACTION NO.: 2:09-CV-00443
                   (Honorable John T. Copenhaver, Jr.)
RAMONA CERRA, et al.

    Defendants.

## CERTIFICATE OF SERVICE

I, Harry F. Bell, Jr., hereby certify that on the 10th day of September, I have electronically filed with the Clerk of the Court a true and exact copy of the foregoing document using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

    Michael M. Fisher
    JACKSON KELLY
    1600 Laidley Tower
    P. O. Box 553
    Charleston, WV 25322

    Gary Pullin
    PULLIN FOWLER FLANAGAN
    James Mark Building
    901 Quarrier Street
    Charleston, West Virginia 25301

    Daniel McNeel Lane, Jr.
    Brian S. Jones
    AKIN BUMP STRAUSS HAUER & FELD LLP
    300 Convent Street, Suite 1500
    San Antonio, TX 78205-3732

          /s/ Harry F. Bell, Jr.
            Harry F. Bell, Jr.