# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CHERYL DOUGHERTY, individually, and on behalf of all others similarly situated, § § § § Plaintiff, § § v. § CIVIL ACTION NO. 2:09-443 § RAMONA CERRA, *et al.* § § Defendants. § | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Daniel McNeel Lane, Jr.
(*admitted pro hac vice*)
Brian S. Jones
(*admitted pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
300 Convent Street, Suite 1600
San Antonio, Texas 78205
(210) 281-7000

-and-

Thomas J. Hurney, Jr., Esquire
WV Bar ID# 1833
Michael M. Fisher, Esquire
WV Bar ID# 4353
JACKSON KELLY PLLC
P.O. Box 553
Charleston, West Virginia 25322
(304) 340-1000

**Attorneys for Defendants Ramona Cerra, John Cook, Greg Garrett, George Edwards, Clarence Burdette, Roland Rich, Luther Cope, The Variable Annuity Life Insurance Company, AIG Retirement Advisors, Inc. (n/k/a VALIC Financial Advisors, Inc.), AIG Retirement Services Company (n/k/a VALIC Retirement Services Company) and American International Group, Inc.**

6400622

# TABLE OF CONTENTS

Preliminary Statement ..................................................................................................................1

Reply in Support of Defendants' Motion to Dismiss ...................................................................3

    I.    SLUSA Preempts Dougherty's Suit ................................................................................3

        A.    Dougherty's Allegations Trigger SLUSA Preemption ........................................3

        B.    Dougherty's Reliance on *Ring* is Misplaced ......................................................6

    II.    The Doctrine of Judicial Estoppel Does Not Bar Defendants from Asserting SLUSA Preemption ........................................................................................7

    III.    Dougherty Has Failed Adequately To Plead Her Fraud Claim .......................................9

    IV.    Dougherty's Unconscionability Claim Fails As A Matter of Law ...............................9

Reply In Support of Defendants' Motion for Summary Judgment ............................................10

    I.    Dougherty Has Failed to Raise a Genuine Issue of Material Fact Showing She Is Entitled to Tolling Under the Discovery Rule ..................................................10

Conclusion .................................................................................................................................13

## TABLE OF AUTHORITIES

**CASES**                                                                                                      Page(s)

*Casto v. Am. Union Boiler Co. of W. Va.*,
   No. Civ. A. 2:05-CV-00757,
   2006 WL 660458 (S.D.W.Va. March 14, 2006) .......................................................................... 7

*Dyke v. Alleman,*
   130 W.Va. 519 (1947) ................................................................................................................ 9

*Elk Refining Co. v. Daniel,*
   199 F.2d 479 (4th Cir. 1952) ...................................................................................................... 9

*Gaither v. City Hosp., Inc.,*
   487 S.E.2d 901 (W.Va. 1997) .............................................................................................. 11, 13

*Havird Oil Co. v. Marathon Oil Co.,*
   149 F.3d 283 (4th Cir. 1998) ...................................................................................................... 7

*Leininger v. Leininger,*
   705 F.2d 727 (5th Cir. 1983) ...................................................................................................... 9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
   547 U.S. 71 (2006) .............................................................................................................. 2, 4, 5

*Merrill v. W. Va. Dept of Health and Human Resources,*
   219 W.Va. 151 (W. Va. 2006) .................................................................................................. 11

*Orlando v. Finance One of West Virginia, Inc.,*
   179 W.Va. 447 (W. Va. 1988) .............................................................................................. 9, 10

*Payne ex rel. Estate of Calzada v. Brake,*
   439 F.3d 198 (4th Cir. 2006) ...................................................................................................... 8

*Ring v. AXA Financial, Inc.,*
   483 F.3d 95 (2nd Cir. 2007) .................................................................................................... 6, 7

*Ross v. Wells Fargo Bank, N.A.,*
   Civ. Action No. 3:08-1452,
   2009 WL 357921 (S.D. W. Va. Feb. 12, 2009) ................................................................... 9, 10

*SEC v. Zandford,*
   535 U.S. 813 (2002) .................................................................................................................... 4

*Segal v. Fifth Third Bank,*
   No. 08-3576, 2009 WL 2958438 (6th Cir. Sept. 17, 2009) ........................................................ 6

*United States v. O'Hagan,*
   521 U.S. 642 (1997)...................................................................................................5

**STATUTES**

28 U.S.C.
   § 1447(c) ....................................................................................................................8

West Virginia Consumer Credit Protection Act
   § 46A-2-121 ............................................................................................................10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CHERYL DOUGHERTY, individually, and on behalf of all others similarly situated, § § § | |
| Plaintiff, § § | |
| v. § | CIVIL ACTION NO. 2:09-443 |
| RAMONA CERRA, *et al.* § § | |
| Defendants. § § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

Defendants Ramona Cerra, John Cook, Greg Garrett, George Edwards, Clarence Burdette, Roland Rich, Luther Cope, The Variable Annuity Life Insurance Company (VALIC), AIG Retirement Advisors, Inc. (n/k/a VALIC Financial Advisors, Inc.), and AIG Retirement Services Company (n/k/a VALIC Retirement Services Company) (collectively, "Defendants")[1] submit this Reply in support of their Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") or, in the alternative, for Summary Judgment, and respectfully show as follows:

*Preliminary Statement*

Dougherty does not—and cannot—dispute that she and other participants in the Teachers' Defined Contribution Plan ("DCP") purchased and sold registered securities offered as investment options through the DCP nor can she dispute that she alleges this trading took place solely as a result of VALIC's fraud and misrepresentations. Indeed, the Third Amended

---

[1] Defendant American International Group, Inc. submitted its Motion to Dismiss on August 14, 2009, and as stated therein, AIG joins the Motion and this Reply to the extent it is consistent and applicable with the arguments made in its Motion to Dismiss for Lack of Personal Jurisdiction.

6400622

1

Complaint (TAC) specifically claims that VALIC representatives defrauded her and others into permanently transferring their retirement savings from the Teacher Retirement System (TRS) into the DCP—an investment platform that offers, among other options, registered securities that class members, including Dougherty, purchased and sold. Accordingly, SLUSA bars Dougherty's claims in her TAC because she alleges VALIC made misrepresentations in connection with the sale of securities.

Building on a long line of federal court precedents, the United States Supreme Court in *Dabit* recently affirmed the very expansive scope of federal jurisdiction in the area of securities regulation by broadly construing SLUSA's "in connection with" requirement. Nevertheless, Dougherty argues that SLUSA does not apply because the connection between VALIC's alleged misrepresentations and the class members' securities transactions are somehow not close enough. Dougherty's proposed construction is contrary to the case law and the purpose of SLUSA, and should be rejected.

Dougherty also argues that alleged misrepresentations were not made in connection with any securities transactions because her proposed class only includes participants who invested in the VALIC Annuity. In truth, the class definition is much broader than Dougherty would have the Court believe. The TAC alleges Dougherty represents those who were induced into transferring from the TRS into the DCP—which necessarily includes securities purchasers—quite apart from participants who invested initially or solely in the VALIC Annuity option. For purposes of this motion, the TAC class definition controls the analysis, not Dougherty's mischaracterization of that definition. SLUSA therefore requires that the TAC be dismissed.

Dougherty contends that the doctrine of judicial estoppel precludes VALIC from invoking SLUSA, but Dougherty fails to establish any of the elements of that doctrine. Dougherty cannot

show that VALIC's position on SLUSA preemption in this litigation is inconsistent with any position VALIC took in prior litigation, that Defendants' position sounded in fact rather than law, or that any other court accepted the alleged prior position Defendants asserted. Absent these elements, judicial estoppel simply does not apply.

Dougherty's fraud claim also lacks substantive merit. According to Dougherty, she has stated a viable fraud claim because West Virginia law recognizes fraud based on a promisor's intent not to keep a promise at the time it is made. Even if Dougherty were correct on the law, her fraud contention fails because she does not allege any promises by Defendants in the TAC, nor does she allege an intent not to keep any such promises.

Finally, Dougherty insists that she has raised a genuine issue of material fact on her discovery claim because she did not have notice of her fraud claims until she received a personalized statement from the CPRB in 2008. Dougherty's evidence, however, rings hollow when stacked up against the evidence demonstrating that she was on constructive notice, on several occasions, starting more than 16 years before she filed suit. Rather than heed such notices and inquire about her potential claim, she contends she did nothing until 2008. The discovery rule in West Virginia does not require actual notice; rather, it only requires that there be sufficient information that a plaintiff, through the exercise of reasonable diligence, can discover she was injured. Dougherty failed to bring her suit until it was too late; therefore her fraud claims are barred by limitations.

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I. SLUSA Preempts Dougherty's Suit

#### A. Dougherty's Allegations Trigger SLUSA Preemption

Dougherty tries to escape SLUSA preemption by arguing that the case does not involve the purchase or sale of a "covered security" and—even if it did—VALIC's alleged

misrepresentations were not made "in connection with" any such purchase or sale. (Plaintiff's Response to Defendants' Motion to Dismiss Third Amended Complaint or, In the Alternative, Motion for Summary Judgment (Plaintiff's Response), at 6-8.)

First, Dougherty does not deny that the mutual fund products she and other class members purchased through the DCP platform are "covered securities" under SLUSA. It does not matter that the VALIC Annuity, which Dougherty purchased initially, is not a security. She alleges misrepresentations were made to class members to induce them to transfer to an investment platform offering a suite of securities products that she and others purchased. The "covered security" requirement is met.

Second, the United States Supreme Court has made clear that SLUSA does not require that a direct security purchase occur for a defendant to meet the "in connection with" requirement, and thus for SLUSA to apply. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006). The "in connection with" requirement should be construed very broadly, so that the phrase is not interpreted "technically and restrictively" but "flexibly" to achieve SLUSA's remedial purpose. *SEC v. Zandford,* 535 U.S. 813, 819 (2002).[2] SLUSA's preemption is triggered when the alleged fraud simply ***"coincides"*** with a securities transaction—whether by

---

[2] Dougherty cites to *Zanford* to support her argument that the "in connection with" requirement does not transform just any breach of fiduciary duty claim into a securities violation. *Zanford,* however, does not help Dougherty, as the Supreme Court found that SLUSA preempted plaintiff's claims. In *Zanford*, plaintiff alleged that a broker had breached his fiduciary duty because he took proceeds from securities sales for his own use. 535 U.S. at 820. Specifically, the Court found that "[t]he securities sales and respondent's fraudulent practices were not independent events. This is not the case in which, after a lawful transaction had been consummated, a broker decided to steal the proceeds and did so. Nor is it the case in which a thief simply invested the proceeds of a routine conversion in the stock market. Rather, respondent's fraud coincided with the sales themselves." *Id.* The principles from *Zanford* are equally applicable in this case. Dougherty alleges that Defendants fraudulently induced her and other class members to transfer their retirement funds from the TRS to the DCP, which allowed her and others to trade in securities. Therefore, there can be no doubt that the fraud Dougherty alleges took place coincided with the purchase of securities.

6400622

4

plaintiff or someone else. *Dabit,* 547 U.S. at 85 (citing *United States v. O'Hagan,* 521 U.S. 642, 651 (1997)) (emphasis added).

The class Dougherty defines in the TAC includes all participants who were induced to transfer their retirement funds from the TRS to the DCP, whether or not they selected the VALIC Annuity option, and thus necessarily includes securities purchasers. (*See* TAC, ¶¶ 2, 5, & 6.) Dougherty specifically alleges that misrepresentations to class members were "calculated to convince them to transition from the State of West Virginia Teacher's Retirement System Defined Benefit Plan ... to the Defined Contribution Plan . . . ***and/or*** to purchase an exorbitantly commission-driven front-loaded brokerage Annuity." (TAC, ¶ 2 (emphasis added).) The inducement to transfer among platforms is central to Dougherty's claim, and participants need not have purchased the VALIC Annuity at all in order to be class members. However, VALIC's alleged misrepresentations were necessarily made in connection with securities transactions because some putative class members ***by definition*** purchased ***only*** securities initially, and many others purchased securities after they transferred.[3] (*See* Def. Appx. Exhs. #1, at 4, 7-8, #2; RJN Exhs. #1a & #1b.) Under *Dabit* and its progeny, these allegations trigger SLUSA preemption.

Dougherty now attempts to avoid the implications of her class definition by arguing that the class definition includes only participants who "initially" (*see* Plaintiff's Response at 8.) selected the VALIC Annuity option. However, the plain language of the class definition itself refutes this obvious mischaracterization. Dougherty cannot simply disregard certain allegations

---

[3] Dougherty herself was a robust securities trader while in the DCP. CPRB records indicate Dougherty completed no less than 106 purchases and sales of securities while invested through the DCP. *See* Summary of Dougherty Transactions, attached as Exhibit B to Defendants' Motion to Remand Response. Dougherty purchased and sold shares in at least 15 different funds—***all of which were registered securities subject to SLUSA***. *Id.* Dougherty alleges she is representative of all the participants in the DCP whom she purports to represent, so the Court must presume that class members who transferred into the DCP engaged in hundreds of thousands of transactions in registered securities, thus firmly embedding Dougherty's class claims within the protections of SLUSA.

in the TAC because it appears expedient to do so at the dismissal stage. *See Segal v. Fifth Third Bank,* No. 08-3576, 2009 WL 2958438, at *3 (6th Cir. Sept. 17, 2009) ("Courts may look to—they must look to—the substance of a complaint's allegations in applying SLUSA… [] [Indeed,] a claimant can no more elude SLUSA's prohibition by editing out covered words from the complaint than by disclaiming their presence."). The actual allegations of the TAC drive the SLUSA analysis, and require dismissal.

### B.     Dougherty's Reliance on *Ring* is Misplaced

Dougherty argues that *Ring v. AXA Financial, Inc.* is analogous to this case and should guide this court on whether SLUSA governs. 483 F.3d 95 (2nd Cir. 2007); (Plaintiff's Response at 8-9.) However, the facts and the principles espoused by the Second Circuit in *Ring* do not apply here. In *Ring,* the plaintiff purchased a whole life policy with a Children's Term Rider (CTR) covering her daughter. *Id.* at 96. The CTR provided coverage (for an additional charge) on the life of the daughter until her 25th birthday. *Id.* Plaintiff alleged the insurance company continued to charge her premiums after her daughter turned 25, and brought a class action suit in state court. *Id* at 97.

The court in *Ring* addressed whether SLUSA barred plaintiff's suit based on the CTR. Plaintiff argued SLUSA did not preempt her claims because the CTR was not a "covered security" within the meaning of the statute. *Id.* at 98. The Second Circuit agreed, holding that "the character of the CTR" remained a non-security insurance product whether or not it was purchased in connection with a variable life insurance policy (a security) or a whole life insurance policy (not a security). "The CTR standing alone is pure insurance and does not take on the qualities of the insurance or annuity with which it must be purchased simply because it cannot be purchased alone." *Id.* at 101.

In this case, unlike *Ring*, there is no doubt that Dougherty and other members of the putative class purchased and sold securities products—specifically, shares of registered mutual funds—and that these purchases, at a minimum, coincided with VALIC's alleged misrepresentations. Dougherty's allegations and class definition clearly link VALIC's alleged misrepresentations to securities transactions by including within the class those who purchased only securities and never selected the VALIC Annuity option.

Furthermore, *Ring* did not address whether the defendant's alleged misrepresentations were made "in connection with" the purchase or sale of a security, which is the issue here. Rather, the Second Circuit's analysis was limited to whether the CTR was a "covered security," and never had to reach the question of whether the "in connection requirement" was met. *Ring*, 483 F.3d at 101. Dougherty cannot dispute that most of the investment options offered within the DCP were "covered securities" for purposes of SLUSA. The analysis in *Ring* does not apply here.

## II. The Doctrine of Judicial Estoppel Does Not Bar Defendants from Asserting SLUSA Preemption

Dougherty erroneously relies on the doctrine of judicial estoppel to challenge Defendants' assertion that SLUSA preempts the claims in her TAC. Courts apply the doctrine of judicial estoppel when 1) the party to be estopped advances an assertion that is inconsistent with a position taken in prior litigation; 2) the position is one of fact, rather than law or legal theory; 3) the court in the first proceeding accepted the prior position; and 4) the party to be estopped acted intentionally and not inadvertently. *Casto v. Am. Union Boiler Co. of W. Va.*, No. Civ. A. 2:05-CV-00757, 2006 WL 660458, at *2 (S.D.W.Va. March 14, 2006) (citing *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 292 (4th Cir. 1998)). The doctrine does not apply here for several reasons.

<u>First</u>, Dougherty has not demonstrated that Defendants asserted an inconsistent position regarding SLUSA's application. There is no inconsistency in asserting that both Dougherty's Second Amended Complaint and her Third Amended Complaint are barred by SLUSA. To the contrary, Defendants have been entirely consistent in their position that SLUSA preempts Dougherty's claims.

<u>Second</u>, the position Defendants have taken on SLUSA preemption applies is a legal question, not a factual one.

<u>Third</u>, Dougherty has not demonstrated that any other court has accepted Defendants' position on SLUSA preemption. Dougherty suggests that this Court accepted Defendants' position by "granting" removal. In reality, courts never "grant removal"; the judicial code allows a defendant to remove a case to federal court. The court cannot be said to have "accepted" Defendants' position on SLUSA merely because it did not interfere *sua sponte* with the Defendants exercise of their rights under the Chapter 28 of the United States Code and the Federal Rules of Civil Procedure.

<u>Finally</u>, Dougherty seems to argue that if SLUSA bars the TAC, then it must have barred the First Amended Complaint as well, and Defendants missed their chance at removal jurisdiction by failing to remove the case within the thirty-day time limit set out in 28 U.S.C. § 1447(c). However, even that time limit applied—it did not—Dougherty has waived any argument that Defendants untimely removed by failing to raise the alleged defect within thirty days of removal.[4] This Court need not consider that issue.

---

[4] A plaintiff can move to remand on the basis that removal was untimely, but must do so within the thirty days of removal. *See* 28 U.S.C. § 1447 (c). Because Dougherty did not move to remand within that thirty day window, she has waived this argument. *See Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203-204 (4th Cir. 2006) (holding that a plaintiff's failure to object to a procedural defect in a notice to remove waives that

### III. Dougherty Has Failed Adequately To Plead Her Fraud Claim

Dougherty concedes that a claim of fraud cannot be based on predictions or future events. She now argues that her claims are not about Defendants' predictions but their alleged intentions not to keep promises they made at the time she enrolled in the DCP. (Plaintiff's Response at 15-16.) Dougherty cites to *Elk* and *Dyke*, which both involve such a promise by the defendants to the plaintiff, with an intention not to perform. *See Elk Refining Co. v. Daniel*, 199 F.2d 479, 481 (4th Cir. 1952); *Dyke v. Alleman*, 130 W.Va. 519, 521 (1947).

By contrast, the essence of Dougherty's claim is that Defendants made misrepresentations, including the misrepresentation to class members that they would retire with more benefits by joining the DCP, that the TRS was on the brink of collapse, and that the teachers had to enroll in the DCP to prevent the loss of their retirement. (Plaintiff's Response at 16.) These allegations—no matter how liberally construed—are not promises. In fact, nowhere in her TAC does Dougherty allege that Defendants "promised" to take any action in exchange for her enrollment in the DCP or her investment in the VALIC Annuity. Dougherty also fails to allege that Defendants intended not to keep any of the alleged promises to them at the time they were made. Dougherty does not even allege that Defendants made a fraudulent promise to class members; her fraud claim should therefore be dismissed.

### IV. Dougherty's Unconscionability Claim Fails As A Matter of Law

Dougherty tries to save her unconscionability claim by asserting that it is in fact recognized as an affirmative cause of action under West Virginia law. To support her argument, she cites to *Orlando v. Finance One of West Virginia, Inc.*, 179 W.Va. 447 (W. Va. 1988) and *Ross v. Wells Fargo Bank, N.A.*, Civ. Action No. 3:08-1452, 2009 WL 357921 (S.D. W. Va. Feb.

---

objection); *see also Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983) ("[T]he time limitation for removal is not jurisdictional; it is merely modal and formal and may be waived").

12, 2009). These cases, however, do not support an independent common-law claim for unconscionability under West Virginia law.

In *Orlando*, the issue was whether a particular clause in a loan agreement was unconscionable under § 46A-2-121 of the West Virginia Consumer Credit Protection Act, which governs consumer contracts. 179 W.Va. at 448-49. The court did not address whether West Virginia recognized unconscionability as an affirmative claim under the common law. *See id.* Dougherty has not pled a violation of § 46A-2-121; thus *Orlando* is inapposite.

While the defendant in *Ross* asserted precisely the same argument as Defendants do here—that West Virginia common law does not recognize an affirmative claim for "unconscionabilty" because it is merely a contract defense—the court never reached this issue. 2009 WL 357921, at *2. Instead, the Court found that, because plaintiff was seeking clarification regarding the validity and the enforceability of the contract between the parties, plaintiff's claim was permissible within the confines of a declaratory judgment action. *Id.*

There is no independent cause of action for "unconscionability" under West Virginia common law, and therefore Dougherty's claim for unconscionability should be dismissed.[5]

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.      Dougherty Has Failed to Raise a Genuine Issue of Material Fact Showing She Is Entitled to Tolling Under the Discovery Rule**

As the defendants have previously shown, Dougherty has failed to plead any facts supporting application of the discovery rule in this case. Absent such allegations, the complaint must be dismissed. In her response, Dougherty wholly fails to address the complete absence of

---

[5] Plaintiff also contends that she should proceed with her claim because Defendants have not cited to any authority expressly holding that her unconscionability claim cannot be raised as a distinct cause of action. However, it is Dougherty's burden to show that this claim exists and not Defendants' burden to show that West Virginia does not permit such a claim. Defendants have diligently researched West Virginia law and have been unable to locate any authority establishing that West Virginia acknowledges such a claim.

allegations supporting the discovery rule. Her silence amounts to a concession that limitations bar her claims.

Dougherty focuses instead on whether there is sufficient evidence to establish a fact issue as to whether she did not discover her claim until 2008. (Plaintiff's Response at 13-14.) Under the discovery rule, the statute of limitations begins to run at the time a plaintiff knows, or by the exercise of reasonable diligence should know 1) that she has been injured, 2) the identity of the entity that owed her a duty to act with due care, and who may have engaged in conduct that breached that duty; and 3) that the conduct of that entity has a causal relation to the injury. *Gaither v. City Hosp., Inc.*, 487 S.E.2d 901, 909 (W.Va. 1997).[6] The evidence Dougherty relies on is insufficient to raise a fact question on any of these elements.

The only evidence Dougherty submits in opposition to summary judgment is a personalized statement she received from the CPRB comparing the TRS pension benefit versus her projected benefits under the DCP. (*Id.*, Exhibit A.) Dougherty argues that this statement alone shows it was not until 2008 that she learned she had invested in the DCP based on Defendants' misrepresentations as to how the DCP would perform over a period of decades.[7] However, Dougherty ignores the compelling evidence in the record that demonstrates she had ample opportunity to discover how the TRS compared (and would compare in the future) vis a vis the DCP, if only she had exercised reasonable diligence.

---

[6] Dougherty contends that Defendants incorrectly rely on the standards set out in *Cart* because the standard articulated in *Gaither* is the preferred test on the discovery rule. In doing so, Dougherty relies on the Supreme Court of Appeals of West Virginia's decision in *Merrill v. W. Va. Dept of Health and Human Resources*, 219 W.Va. 151 (W. Va. 2006). Dougherty, however, seems to misinterpret the *Merrill* Court's discussion of the two versions of the discovery rule. *Merrill* does not determine which of the two rules control in West Virginia. In fact, the court never determines which is preferable and instead analyzes the facts under the two different rules. This issue, however, is merely academic, as even under *Gaither*, plaintiff cannot survive dismissal.

[7] Aside from the fact that Dougherty had not pled this in the TAC, she has erroneously claimed that such action can be attributed to Defendants. This fee was charged by the CPRB—not the VALIC—for those who chose to return to the TRS. This fee amounted to the difference between the 4.5% teachers had to contribute to the DCP versus the 6% that participants in the TRS were required to contribute. VALIC had nothing to do with this decision.

First, in 1992, Dougherty received an illustration that explained all of the details of the plan and how to calculate projections. (*See* Def. Appx. Exh. #6.) Second, Dougherty reallocated her funds in the DCP on December 16, 1996. (*See* Defendant's Supplemental Appendix Exh. #1.) At that time, Dougherty decided, with no assistance from VALIC, to transfer from the VALIC Annuity and allocate 80% in the Fidelity Growth Opportunities Fund and 20% in the Franklin Income Fund, which were both securities. (*Id.*) Dougherty clearly made a conscious choice to reallocate her funds at this time, which means she must have evaluated the performance of the VALIC Annuity investment option in light of her retirement savings objectives. Thus, Dougherty, at the very least, was aware of how the Annuity performed in comparison to other securities and her retirement savings objectives. Dougherty cannot deny she was on constructive notice of her claim at least as of 1996.

Finally, in 2002—ten years later—a number of newspaper articles were published identifying the exact claims Dougherty asserts in the TAC. Dougherty complains that these articles were insufficient to trigger notice of a specific concern over the TRS and VALIC's sales practices.[8] However, these articles were published in the Charleston Gazette and the Herald Dispatch—two newspapers with widespread circulation in West Virginia, and whose news articles are also accessible through the internet. The State of West Virginia saw these same reports and responded by conducting an investigation into VALIC's practices. (RJN Exhs. #8, #9, #11, #12 & #14.) Given the scale of controversy surrounding the TRS at that time, and the number of complaints by teachers, it cannot be disputed that Dougherty could have discovered she had the same exact claims had she simply exercised some degree of due diligence. Certainly

---

[8] Dougherty also challenges the admissibility of the articles as hearsay. Defendants, however, do not rely on the articles for the truth of the matter asserted within the articles but to show that Dougherty was on notice of her claims in 2002. Such reliance is permissible in the Fourth Circuit. *See* Defendants Reply in Support of their Request for Judicial Notice.

6400622

12

these articles demonstrate that other teachers—members of the putative class—were diligent enough to discover the facts supporting their claim of misrepresentations, and were even able to describe those facts in prominent media outlets.

Under the *Gaither* standard, it is not whether Dougherty in fact discovered her claim in 2002, but whether she **could have done so** through the exercise of reasonable diligence. The undisputed facts demonstrate she could have. Dougherty has failed to demonstrate that the discovery rule applies, and therefore her claims are barred by limitations.

### *Conclusion*

Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, should be granted.

Respectfully Submitted,

/s/ Daniel McNeel Lane, Jr.
Daniel McNeel Lane, Jr.
(*admitted pro hac vice*)
Brian S. Jones
(*admitted pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
300 Convent Street, Suite 1600
San Antonio, Texas 78205
(210) 281-7000

-and-

Thomas J. Hurney, Jr., Esquire
WV Bar ID# 1833
Michael M. Fisher, Esquire
WV Bar ID# 4353
JACKSON KELLY PLLC
P.O. Box 553
Charleston, West Virginia 25322
(304) 340-1000

**Attorneys for Defendants Ramona Cerra, John Cook, Greg Garrett, George Edwards, Clarence Burdette, Roland Rich, Luther Cope, The Variable Annuity Life Insurance Company, AIG Retirement Advisors, Inc. (n/k/a VALIC Financial Advisors, Inc.), AIG Retirement Services Company (n/k/a VALIC Retirement Services Company) and American International Group, Inc.**

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that all parties listed on this certificate of service will receive a copy of the foregoing document filed electronically with the United States District Court for the Southern District of West Virginia, on this 30th day of September 2009, with notice of case activity to be generated and ECF notice to be sent electronically by the Clerk of the Court. A copy will be mailed Via Certified Mail to those who do not receive ECF notice from the Clerk of the Court:

Harry F. Bell, Jr.
William Bands
Bell & Bands, PLLC
30 Capitol Street
P.O. Box 1723
Charleston, WV 25326-1723

Charles Webb
The Webb Law Firm
108 1/2 Capitol Street, Suite 201
Charleston, WV 25301

Gary Pullin
Pullin Fowler Flanagan PLLC
901 Quarrier Street
Charleston, WV 25301

                                        /s/ Daniel McNeel Lane, Jr.
                                        DANIEL MCNEEL LANE, JR.