UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CHERYL DOUGHERTY, individually and
on behalf of all others similarly
situated,

       Plaintiff

v.                            Civil Action No. 2:09-443

RAMONA CERRA, individually;
JOHN COOK, individually;
GREG GARRETT, individually;
ROLAND RICH, individually;
GEORGE M. EDWARDS, individually;
CLARENCE BURDETTE, individually;
LUTHER COPE, individually;
and all other Presently Unknown
Individual Agents/Employees/Contract
Workers/Representatives of VALIC/AIG,
as named below, involved in the sale
and marketing of VALIC/AIG retirement
products in West Virginia to existing
and newly hired members of the West
Virginia Teachers' Retirement System;
AMERICAN INTERNATIONAL GROUP, INC.,
a Texas corporation; AIG RETIREMENT
GROUP, formerly known as AIG Valic Group;
VARIABLE ANNUITY LIFE INSURANCE COMPANY,
a Texas corporation; AIG RETIREMENT
ADVISORS, INC., a Texas corporation
formerly known as Valic Financial
Advisors, Inc.; AIG RETIREMENT
SERVICES COMPANY, a Texas corporation
formerly known as Valic Retirement
Services Company; VARIABLE ANNUITY
MARKETING COMPANY, a Texas
corporation; and the WEST VIRGINIA
CONSOLIDATED PUBLIC RETIREMENT
BOARD, a West Virginia state Agency,

       Defendants

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is plaintiff's motion to remand filed June 25, 2009.

I.

Plaintiff is a public school teacher in Marshall County and a member of the state's retirement system. (3d Am. Compl. ¶ 12). Prior to 1991, public school employees participated in a pension plan called the Teacher Retirement System ("TRS"), being a Defined Benefit Plan ("DBP"). (Def. Resp. Mot. Remand 2). In the school year 1990-91, defendant Cerra visited the elementary school where plaintiff worked and spoke with her and other public school employees about their pension plans. (3d Am. Compl. ¶ 2; Pl.'s Rep. to Def.'s Resp. 2). Specifically, plaintiff alleges that the employees were led to believe that Cerra was a representative of defendant West Virginia Consolidated Public Retirement Board ("the Board"); that the TRS was in danger and would not pay promised retirement benefits; that an alternative pension plan, the Defined Contribution Plan ("DCP"), administered by the Board, would pay retirement benefits and would perform better than the TRS; that transferring to the DCP was in the best

2

interest of the employees; and that an immediate decision regarding switching funds was required.  (3d Am. Compl. ¶ 5; Def. Resp. Mot. Remand 3, 6-7; Pl.'s Rep. to Def.'s Resp. 2).

Under the DCP, participants are able to manage their own retirement savings by selecting from one or more of a variety of approved investment options including Board-specified plans for each stocks, bonds, money market accounts, a guaranteed investment fund, and a fixed annuity offered by the Variable Annuity Life Insurance Company Annuity ("VALIC Annuity") administered by the AIG/VALIC defendants.[1]  (Def. Resp. Mot. Remand 5; 3d Amd. Compl. ¶ 14).  These options, along with other information on the DCP, were set forth in various explanatory

---

[1] A Defined Contribution Plan is an alternative retirement system to the Defined Benefit Plan.  In a Defined Benefit Plan, the employer and employee each contribute a percentage of the employee's salary, and upon retirement, the employee receives a defined benefit, or a guaranteed specific dollar amount based on the employee's age, years of service and salary.  In a Defined Contribution Plan, the employee and employer each contribute a percent of the employee's salary, but the employee has investment options and he can distribute the assets in his retirement account among the options in 20% increments.  Upon retiring, the employee gets back what he has contributed to his account over the years and the money he has made from his investments.  In other words, in a Defined <u>Benefit</u> Plan, the benefit is determined by a formula, but in a Defined <u>Contribution</u> Plan, the benefit depends on the employee's investments.  <u>See</u> Def. Resp. Mot. Remand 2-5; West Virginia Consolidated Public Retirement Board Home Page, "Teachers' Retirement System", "Teachers' Defined Contribution," www.wvretirement.com.

3

documents sent to DCP participants.  (Def. Resp. Mot. Remand 7).
Plaintiff alleges that Cerra was actually a representative of the
AIG/VALIC defendants, and received a commission for convincing
public school employees to switch from the TRS to the DCP and
exercise their option to purchase the VALIC Annuity.  (3d Amd.
Compl. ¶ 15).  As a result of Cerra's misrepresentations,
plaintiff claims that she transferred her entire retirement fund
account from the TRS to the DCP, and specifically to the fixed
VALIC Annuity in 1992.  (Pl.'s Rep. to Def.'s Resp. 2).

    In 2008, DCP participants were given the option to
transfer back to the TRS if at least 65 percent of DCP members
elected to transfer.  (Pl.'s Rep. to Def.'s Resp. 2).  At that
time, the Board provided statements of DCP members' retirement
benefits.  (Pl.'s Rep. to Def.'s Resp. 2).  Upon receiving her
statement in April 2008, plaintiff learned that, contrary to
Cerra's representations, her retirement account fared much worse
under the DCP's fixed VALIC Annuity than it would have had she
stayed in the TRS.  (Pl.'s Rep. to Def.'s Resp. 2-3).

    On May 12, 2008, plaintiff instituted this class action
in the Circuit Court of Marshall County on behalf of those
individuals who transferred their retirement funds from the TRS
to the VALIC Annuity in the DCP after relying on Cerra's

4

representations. (3d Am. Compl. ¶ 12).  On July 18, 2008,
plaintiff amended her complaint to include the Board and eleven
additional individual AIG/VALIC representatives.  (Amd. Compl.
1).  Thereafter, the case was transferred to the Circuit Court of
Kanawha County.  (Pl.'s Rep. to Def.'s Resp. 3).  On March 26,
2009, plaintiff moved for leave to file the second amended
complaint that added 27 new claims linking the poor performance
of the DCP's VALIC Annuity to the AIG/VALIC defendants' alleged
engagement in high risk securities activities, such as credit
default swaps, that led to the financial crisis and government
bailout of AIG in 2008.  (2d Am. Compl. ¶¶ 14-37; Pl.'s Rep. to
Def.'s Resp. 3).

        Defendants removed on April 24, 2009, within 30 days of
plaintiff moving for leave to file the second amended complaint,
citing the new allegations of securities fraud as grounds for
removal under the Securities Litigation Uniform Standards Act of
1998 ("SLUSA").  (Not. Removal ¶¶ 6, 12).  After filing the
second amended complaint, plaintiff reconsidered the 27 new
claims and concluded that the difficulties in litigating them
were unjustifiable.  (Pl. Mem. Supp. Mot. Remand 2).  On June 25,
2009, plaintiff filed the third amended complaint withdrawing the
27 new claims from the second amended complaint, and omitting ten

of the individual AIG/VALIC representatives added in the seconded amended complaint.  The first and third amended complaints are essentially identical.

On June 25, 2009, plaintiff moved to remand, alleging that the SLUSA claims, upon which the case was removed, had been withdrawn by the filing of the third amended complaint. Plaintiff asserts that the remaining claims arise under state law, and that principles of economy, convenience, fairness and comity warrant remand.  (Pl. Mem. Supp. Mot. Remand 1). Defendants Cerra, Cook, Garrett, Edwards, Burdette, Rich, Cope, VALIC, AIG Retirement Advisors, and AIG Retirement Services Company (the AIG/VALIC defendants) responded in opposition to remand on September 11, 2009.

II.

In general, if federal district courts possess original jurisdiction over a civil action commenced in state court, the action "may be removed by the defendant or the defendants."  28 U.S.C. § 1441(a).  Federal question jurisdiction is one form of original jurisdiction.  It exists over "all civil actions arising under the Constitution, laws, or treaties of the

6

United States."  28 U.S.C. § 1331.  "Congress gave
federal-question jurisdiction to district courts under 28 U.S.C.
§ 1331 to hear 'only those cases in which a well-pleaded
complaint establishes either [1] that federal law creates the
cause of action or [2] that the plaintiff's right to relief
necessarily depends on resolution of a substantial question of
federal law.'"  Int'l Sci. & Tech. Inst., Inc. v. Inacom
Commc'ns, Inc., 106 F.3d 1146, 1154 (4th Cir. 1997).  In
determining whether a claim "arises under" federal law courts
apply the well-pleaded complaint rule, pursuant to which "courts
ordinarily . . . look no further than the plaintiff's [properly
pleaded] complaint in determining whether a lawsuit raises issues
of federal law capable of creating federal-question
jurisdiction."  Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th
Cir. 2005) (internal quotation marks omitted).  "[A]ctions in
which defendants merely claim a substantive federal defense to a
state-law claim do not raise a federal question."  In re
Blackwater Sec. Consulting, LLC, 460 F.3d 576, 584 (4th Cir.
2006) (citing Louisville & N. R. Co. v. Mottley, 211 U.S. 149,
152 (1908)).  The well-pleaded complaint rule "makes the
plaintiff the master of the claim; he or she may avoid federal
jurisdiction by exclusive reliance on state law."  Caterpillar v.
Williams, 483 U.S. 386, 392 (1987).

7

The party seeking removal bears the burden of establishing federal jurisdiction.  See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); In re Blackwater, 460 F.3d at 584.  Because removal jurisdiction implicates significant federalism concerns, it is strictly construed.  See Mulcahey, 29 F.3d at 151.  If federal jurisdiction is doubtful, the case must be remanded.  See id.; Palisades Collections LLC v. AT&T Mobility LLC, 552 F.3d 327, 336 (4th Cir. 2008).

## III.

Defendants oppose remand, asserting that 1) the second amended complaint, and not the third amended complaint, is the operative pleading for remand purposes; 2) SLUSA vests federal courts with exclusive jurisdiction to entertain plaintiff's claims; and 3) the principles of policy, comity, fairness and judicial economy dictate that the court retain jurisdiction over this case.[2]

---

[2] Defendants combine the first and second contentions under the single argument heading "The Court Should Deny Dougherty's Motion to Remand Because SLUSA Mandates That Her Case Be Heard Only in Federal Court."

8

A. Federal Subject Matter Jurisdiction


        1. The Operative Pleading for Remand Purposes


        In opposing remand, defendants urge the court to
examine the complaint as it existed at the time of removal, i.e.,
the second amended complaint with the 27 securities fraud
allegations included.  They cite Pullman Co. v. Jenkins, 305 U.S.
534 (1939), Pinney v. Nokia, Inc., 402 F.3d 430 (4th Cir. 2005),
and Brown v. Eastern States Corp., 181 F.2d 26 (4th Cir. 1950) in
support.  In Pullman, the Supreme Court concluded that the
plaintiff's second amended complaint should not have been
considered in determining whether removal based on the first
amended complaint was proper.  Pullman, 305 U.S. at 537.  Our
court of appeals in Pinney reversed the district court's denial
of remand and cited Pullman in holding that, where the district
court allowed the plaintiffs to amend their complaints after it
had already denied their motion to remand, the original
complaints, rather than the complaints amended after remand, were
the operative pleadings.  Id. at 443.  In Brown, the court of
appeals held that where an original complaint asserted federal
law and was properly removed, the plaintiff could not then amend
the complaint to eliminate the federal question in an effort to

                              9

remand the case.  Brown, 181 F.2d at 28-29.

        These opinions must be read in light of subsequent
Supreme Court decisions and other decisions of our court of
appeals.  For example, in Carnegie-Mellon University v. Cohill,
484 U.S. 343 (1988), the Court concluded that the decision to
retain jurisdiction over a case when the federal question has
fallen away is a discretionary one.  The decision in Cohill
reflects that an amendment abandoning federal claims may warrant
remand.  Id. at 346, 357; see also Lontz v. Tharp, 413 F.3d 435,
440 (4th Cir. 2005).  Additionally, in Harless v. CSX Hotels,
Inc., 389 F.3d 444 (4th Cir. 2004), where plaintiff amended her
complaint after removal to eliminate references to the preemptive
federal law, our court of appeals concluded that the decision to
remand a case after an amendment eliminating federal claims is
"within the discretion of the trial court . . .."  Id. at 448.
The Harless court noted that while it was clear the plaintiff was
trying to avoid federal court, she had other good faith reasons
for the amendment that were sufficient to warrant the district
court's discretion on the question of remand.  Id. at 448.

        Like the plaintiff in Harless, one reason for
Dougherty's third amended complaint may have arisen from a desire
to avoid the federal forum.  Harless, 389 F.3d at 448.  However,

as plaintiff sets forth in her motion to remand, she also had
"substantive and meritorious reasons" for eliminating the claims
in that the difficulties posed by litigating them were too great
to justify going forward with the SLUSA claims.  See id.  Based
upon these considerations and those that follow, the operative
pleading for remand purposes is the third amended complaint.


### 2.  SLUSA's Limitations and Removal Provision


Before SLUSA, Congress passed the Private Securities
Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z-1, 78u-4, in
1995, which created heightened pleading requirements for private
securities fraud claims in efforts to avoid frivolous lawsuits,
or strike suits, filed by plaintiffs to encourage settlements
from corporate entities.  See Teachers' Retirement System of LA
v. Hunter, 477 F.3d 162, 171-72 (4th Cir. 2007).  Plaintiffs were
able to avoid the stringent requirements of the PSLRA, however,
by filing their claims in state court.  H.R. Conf. Rep. 105-803
(1998).

In response, Congress enacted SLUSA, which amended the
1933 and 1934 Securities Acts to limit class actions filed in
state court. The 1933 Act was amended in part as follows:

11

**(b) CLASS ACTION LIMITATIONS.**--No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

**(c) REMOVAL OF COVERED CLASS ACTIONS.**--Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

15 U.S.C. § 77p(b), 77p(c).[3]

> According to the statutory definition,

A Security is a covered security if such security is --

> A. listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities);

> B. listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing

---

[3] SLUSA also amends the 1934 Act with essentially identical language.  See 15 U.S.C. § 78bb.  All references to § 77p herein incorporate references to § 78bb's identical language.

standards applicable to securities described in
subparagraph (A); or

C. is a security of the same issuer that is equal in
seniority or that is a senior security to a security
described in subparagraph (A) or (B).

. . .

[Or] if such security is a security issued by an
investment company that is registered, or that has
filed a registration statement, under the Investment
Company Act of 1940.

15 U.S.C. § 78bb(5)(E); 15 U.S.C. § 77r(b)(1)-(2).  Additionally,

the instrument must fall under the above statutory definition "at

the time during which it is alleged that the misrepresentation,

omission, or manipulative or deceptive conduct occurred."  15

U.S.C. § 78bb(5)(E).

The VALIC Annuity at issue is conceded to be a fixed

annuity.  (Not. of Removal ¶ 18).  Without regard to whether this

suit is a "covered class action" under § 77p(c), the VALIC

Annuity here is not a "covered security," under the foregoing

definition.  The Supreme Court has held that a variable annuity

is classified as a security and therefore is a "covered security"

under the SLUSA definition.  SEC v. Variable Annuity Life Ins.

Co., 359 U.S. 65, 79-80 (1959).  Fixed annuities, on the other

hand, do not share the same risk characteristics and have not

been found to be "covered" under SLUSA.  See Winne v. Equitable

13

**Life Assurance Society of U.S.**, 315 F.Supp.2d 404, 411-13 (S.D. N.Y. 2003) (finding plaintiff's investment was a "covered security" when he transferred his account from a fixed annuity to a variable annuity).  The VALIC Annuity is classified as a fixed annuity option.  (Def.'s Resp. to Mot. Remand Ex. B).  Moreover, the AIG/VALIC defendants agree in their Notice of Removal that the fixed annuity offered to the plaintiff is not a security. (Not. of Removal ¶ 18).

It is clear from the complaint that plaintiff is alleging defendants committed fraud and made misstatements in order to induce plaintiff and her class to transfer their retirement accounts and purchase the VALIC Annuity.  (3d Am. Compl. ¶¶ 22, 42, 46, 53).  However, plaintiff makes no mention of other registered securities she and her fellow class members might have chosen as investment options available to them by participating in the DCP.  Defendants nevertheless contend that plaintiff's allegations infer that the fraud and misstatements were necessarily made "in connection with" these other types of registered, and hence "covered," securities, as required by SLUSA.  15 U.S.C. § 77p(b).

As noted above, other investment options were available in the DCP, but plaintiff only complains of being induced to

14

purchase the VALIC Annuity, making the other investment options
irrelevant, despite the fact that she may have exercised her
option to invest in other instruments or plans while
participating in the DCP.  Defendants assert that the
misrepresentations plaintiff allege concern the DCP generally,
and therefore are also necessarily "in connection with" other
registered securities included in the DCP.  (Def. Resp. Mot.
Remand 17).  However, the AIG/VALIC defendants apparently have no
relationship with the other investment options, registered or
not, in the DCP.  There is no reason that the AIG/VALIC
defendants would have fraudulently induced plaintiff to transfer
to the DCP so she would invest in options other than the VALIC
Annuity, nor has plaintiff alleged as much.

          Defendants rely on caselaw elucidating the "in
connection with" requirement in support of their argument that
other registered securities available within the DCP fall within
the ambit of plaintiff's allegations.  Our court of appeals'
recent decision in <u>SEC v. Pirate Investor, LLC</u>, 580 F.3d 233,
(4th Cir. 2009) illustrates why that assertion must fail.  In
<u>Pirate Investor</u>, the court set out the following factors for
consideration in determining whether the "in connection with"
requirement has been satisfied:

1) whether a securities sale was necessary to the completion of the fraudulent scheme;

2) whether the parties' relationship was such that it would necessarily involve trading in securities;

3) whether the defendant intended to induce a securities transaction; and

4) whether material misrepresentations were "disseminated to the public in a medium upon which a reasonable investor would rely."

Id. at 244-45 (citations omitted).

First, in this case, a securities sale was not necessary to complete the allegedly fraudulent scheme because plaintiff had the option of only purchasing the VALIC Annuity. Similarly, as to the second factor, transferring to the DCP would not necessarily involve trading in registered securities. Third, plaintiff alleges that the AIG/VALIC defendants' intent in their misrepresentations was to sell the VALIC Annuity by way of transfer to the DCP. Finally, the misrepresentations were made to a specific class of people in a private setting, and not the investing public. See SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 841, 862 (2d Cir. 1968) (the investing public was misled when defendant corporation issued a deceptive press release).

Although the Pirate Investor factors are not mandatory requirements in determining whether the "in connection with"

16

requirement has been met, they are guiding in the inquiry.  As
the above discussion of the factors demonstrates, there is no
evidence that supports the conclusion that the fraud of which
plaintiff complains occurred in connection with the purchase or
sale of a covered security.  The fraud alleged by plaintiff in
this case solely deals with the fixed VALIC Annuity, which is not
a covered security.  Further, plaintiff had the clear option of
only purchasing the VALIC non-covered security, which is likely
the option the AIG/VALIC defendants were marketing.  Inasmuch as
there is no covered security that was a necessary, or even an
incidental, component to the fraud alleged in plaintiff's
complaint, the "in connection with" requirement is not satisfied.
Accordingly, this case does not fall within the ambit of SLUSA,
or, more particularly, its removal provision.[4]

---

[4] Defendants also make passing reference to complete
preemption in their response to plaintiff's motion to remand.
("Therefore, SLUSA completely preempts state law based, private
class actions alleging fraud or manipulation touching on the
purchase or sale of securities."  (Resp. Mot. Remand at 13)).
This appears to be an inartful or misguided reference to the
complete preemption doctrine, as SLUSA's removal provision
provides an explicit statutory basis for removal rather than
necessitating reliance on the narrow complete preemption
doctrine.  See Kircher v. Putnam Funds Trust, 547 U.S. 633, 636
n. 1 (2006) ("[SLUSA's] preclusion provision is often called a
preemption provision; the Act, however, does not itself displace
state law with federal law but makes some state-law claims
nonactionable through the class-action device in federal as well
as state court.").

Moreover, defendants' effort to premise removability on presumed securities in the DCP other than the fixed VALIC Annuities is in any event unavailing.  The defendants timely removed this case within 30 days of learning of plaintiff's second amended complaint, namely, the pleading that included the 27 claims of securities fraud against the VALIC/AIG defendants. As noted, the third amended complaint is essentially identical to the first amended complaint, withdrawing those 27 new claims found only in the second amended complaint.  It would appear futile for defendants to argue that in the absence of plaintiff's 27 claims that made the case removable, the plaintiff's remaining claims still assert a federal question.  If plaintiff's first amended complaint contained claims rendering the action removable, defendants were required to file a notice of removal within 30 days after the first amended complaint was filed.  28 U.S.C. § 1446(b).

B. Discretionary Remand

As noted, our court of appeals has observed time and again that it is obliged to exercise caution in the removal setting:

18

> We have noted our obligation "to construe removal
> jurisdiction strictly because of the 'significant
> federalism concerns' implicated" by it. <u>Maryland
> Stadium Auth. v. Ellerbe Becket Inc.</u>, 407 F.3d 255, 260
> (4th Cir. 2005) (quoting <u>Mulcahey</u>, 29 F.3d at 151). . .
> . Consistent with these principles, we have recognized
> that state law complaints usually must stay in state
> court when they assert what appear to be state law
> claims. <u>See</u>, <u>e.g.</u>, <u>Harless v. CSX Hotels, Inc.</u>, 389
> F.3d 444, 450 (4th Cir.2004); <u>King</u>, 337 F.3d at 424;
> <u>Darcangelo v. Verizon Communications, Inc.</u>, 292 F.3d
> 181, 186 (4th Cir. 2002); <u>Cook v. Georgetown Steel
> Corp.</u>, 770 F.2d 1272, 1274 (4th Cir. 1985).

<u>Lontz v. Tharp</u>, 413 F.3d 435, 440 (4th Cir. 2005).

Because plaintiff had "substantive and meritorious" and good faith reasons to file her third amended complaint other than to defeat federal jurisdiction, the decision to remand is within the court's discretion.  <u>Harless</u>, 389 F.3d at 448.  The decision whether to exercise jurisdiction over state claims invokes considerations of judicial economy, convenience and fairness to litigants.  <u>Id.</u>  "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law."  <u>Id.</u> (quoting <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726-27 (1966).

The considerations in <u>Harless</u> weigh in favor of granting plaintiff's motion for remand.  While defendants have filed a motion to dismiss plaintiff's third amended complaint

19

that was subsequently responded and replied to, the case is still in its infancy. As plaintiff's claims no longer implicate SLUSA, and the case involves matters of specific state interest (namely, public employees' retirement accounts) and a state agency party, the interests of comity, convenience and fairness to parties and the absence of underlying federal policy favor remand.

Inasmuch as the only federal issues have been eliminated and inasmuch further as the remaining state law claims are not related to any issues of federal policy, the court declines to exercise jurisdiction over the remaining state law claims.

It is, accordingly, ORDERED that plaintiff's motion to remand be, and it hereby is, granted. It is further ORDERED that this action be, and it hereby is, remanded to the Circuit Court of Kanawha County.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: January 20, 2010

John T. Copenhaver, Jr.
United States District Judge

20